UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

GEORGE WHITMIRE,                )
                                )
    Plaintiff               )
                                )
vs.                             )   Case No.   4:20-cv-01391-HNJ
                                )
SOCIAL SECURITY ADMINISTRATION, )
COMMISSIONER,                   )
                                )
    Defendant               )

# MEMORANDUM OPINION

Plaintiff George Whitmire seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner"), regarding his claim for a period of disability, disability insurance, and supplemental security income benefits. The undersigned carefully considered the record, and for the reasons expressed herein, **AFFIRMS** the Commissioner's decision.[1]

## LAW AND STANDARD OF REVIEW

To qualify for benefits, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including the entry of final judgment. (Doc. 12).

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden rests upon the claimant at the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ." *Id.* at §§ 404.1520(c), 416.920(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or medically equal one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02. *Id.* at §§ 404.1520(d), 416.920(d). If a claimant's impairment meets the applicable criteria at this step, that claimant's

2

impairment would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if the claimant suffers a listed impairment. *See Williams v. Astrue,* 416 F. App'x 861, 862 (11th Cir. 2011) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience.") (citing 20 C.F.R. §§ 404.1520, 416.920; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step, where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled. *See id.*

If the claimant succeeds at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC, age, education and past work experience, that the claimant is capable of performing other work. 20

C.F.R. §§ 404.1512(b)(3), 416.912(b)(3), 404.1520(g), 416.920(g).  If the claimant can perform other work, the evaluator will not find the claimant disabled.  *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g).  If the claimant cannot perform other work, the evaluator will find the claimant disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'"  *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).  The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable . . . and supported by substantial evidence," *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ.  *Winschel*, 631 F.3d at 1178 (citations and internal quotation marks omitted).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.* (citations omitted).  Nonetheless, substantial evidence exists even if the evidence preponderates

4

against the Commissioner's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

Mr. Whitmire, age 52 at the time of the ALJ hearing, protectively filed applications for a period of disability, disability insurance, and supplemental security income benefits on March 2, 2018, alleging disability as of February 13, 2018. (Tr. 31, 33, 154-68). The Commissioner denied Whitmire's claims, and Whitmire timely filed a request for hearing on June 5, 2018. (Tr. 72-75, 78-82, 85-101). The Administrative Law Judge ("ALJ") held a hearing on November 4, 2019 (Tr. 29-47), and issued an opinion on November 27, 2019, denying Whitmire's claim. (Tr. 12-23).

Applying the five-step sequential process, the ALJ found at step one that Whitmire did not engage in substantial gainful activity after February 13, 2018, his alleged onset date. (Tr. 17). At step two, the ALJ found Whitmire had the severe impairments of aortic valve disease, ischemic heart disease, cardiac dysrhythmias, and congestive heart failure. (*Id.*). At step three, the ALJ found that Whitmire's impairments, or combination of impairments, did not meet or medically equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18).

Next, the ALJ found that Whitmire exhibited the residual functional capacity ("RFC")

to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally climbing ramps or stairs, never climbing ladders, ropes or scaffolds, frequently balancing, occasionally stooping, kneeling or crouching, never crawling, must avoid frequent exposure to extreme cold, extreme heat, wetness and humidity, must avoid even occasional exposure to dust, odors, fumes and pulmonary irritants, must avoid all exposure to unprotected heights, unprotected moving mechanical parts and dangerous machinery, time off task can be accommodated by normal work breaks.

(Tr. 19).

At step four, the ALJ determined Whitmire could not perform his past relevant work as a dry cleaner and meat cutter. (Tr. 21). However, at step five, the ALJ determined Whitmire could perform a significant number of other jobs in the national economy considering his age, education, work experience, and RFC. (Tr. 22). Accordingly, the ALJ determined that Whitmire has not suffered a disability, as defined by the Social Security Act, since February 13, 2018. (*Id.*).

Whitmire timely requested review of the ALJ's decision. (Tr. 148-51). On July 21, 2020, the Appeals Council denied review, which deems the ALJ's decision as the Commissioner's final decision. (Tr. 1-6). On September 20, 2020, Whitmire filed his complaint with the court seeking review of the ALJ's decision. (Doc. 1).

## ANALYSIS

In this appeal, Whitmire argues the ALJ failed to properly evaluate his subjective symptoms and their effect on his ability to work. For the reasons discussed below, the undersigned concludes that contention does not warrant reversal.

> A three-part "pain standard" applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. [*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam)]. The pain standard requires evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged pain arising from the condition or a showing that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Id.*

*Porto v. Acting Comm'r of Soc. Sec. Admin.*, 851 F. App'x 142, 148 (11th Cir. 2021) (per curiam). A claimant's testimony coupled with evidence that meets this standard suffice "to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted).

Social Security Ruling ("SSR") 16-3p, effective March 28, 2016, and republished October 25, 2017, eliminates the use of the term "credibility" as it relates to assessing the claimant's complaints of pain and clarifies that the ALJ "will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." SSR 16-3p, 2017 WL 5180304, *7 (Oct. 25, 2017). An ALJ rendering findings regarding a claimant's subjective symptoms may consider a variety of factors, including: the claimant's daily activities; symptom location, duration, frequency, and intensity; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; and other factors concerning

functional limitations and restrictions due to symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4).

SSR 16-3p further explains that the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's symptoms." 2017 WL 5180304, at *9; *see also Wilson*, 284 F.3d at 1225 (If an ALJ discredits a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so.").

Whitmire testified he has undergone multiple heart surgeries, and he has a pacemaker. He feels tired and out of breath, and when his heart flutters, he almost blacks out. (Tr. 36-37). He can lift and carry up to 25 pounds, pursuant to his doctors' instructions. He does not experience any side effects from his medications. He can care for his personal needs and prepare food, but he cannot help with household chores or mow the lawn. He cannot grocery shop because it requires too much walking. He mostly lies down and watches television at home. (Tr. 39-42).

The ALJ found Whitmire's medically determinable impairments could reasonably cause some of his alleged symptoms, but Whitmire's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the record evidence. (Tr. 20). To support that finding, the ALJ stated he "considered the entire medical record even when not explicitly discussed." (*Id.*).

8

He specifically addressed Whitmire's history of multiple heart surgeries and pacemaker placement, but he noted that Whitmire

> was subsequently noted as recovering well and doing well overall, presenting without chest pain or shortness of breath. . . .  On March 2019 [*sic*], he was noted as presenting with appropriate device functioning and no sustained atrial or ventricular arrhythmias were detected. . . .  He exhibited an irregular rhythm on occasion, but he also did not exhibit deformities and had a normal PMI with no thrills palpable. . . .  However, on other occasions he demonstrated normal cardiac findings such as a regular rate and rhythm. . . .

(*Id.*).  The ALJ also relied on the assessment of Dr. Frederick Ransom, the state agency physician, who opined Whitmire could perform light work with additional postural and environmental limitations, as Dr. Ransom's opinion was "supported by cited findings such as [Whitimire's] Xarelto therapy for his cardiac symptoms that dictates that he never climb ladders, ropes or scaffolds or crawl and is consistent with his stable, but ongoing treatment for his cardiac impairments."  (Tr. 21).  The ALJ imposed limitations on Whitmire's residual functional capacity to accommodate his heart problems.  (Tr. 20).

Whitmire first argues the ALJ failed to adequately articulate reasons for not fully crediting his testimony about subjective symptoms.  However, the ALJ cited specific medical records to support his findings that Whitmire's condition improved after surgery, without chest pain or shortness of breath, and with a pacemaker that only sometimes demonstrated irregular rhythm.  The record supports those findings, as an

9

April 11, 2018, treatment note (approximately two months after his bypass and valve replacement surgery) stated Whitmire presented "with no complaints of chest pain or shortness of breath, and is doing quite well overall." Whitmire also denied racing or skipping heart beats, dizziness, passing out, swelling of extremities, weight gain, and leg pain. Dr. Holden stated Whitmire could drive short distances, resume normal daily activities as tolerated, and lift up to 20 pounds. (Tr. 456-58). Moreover, interrogations of Whitmire's pacemaker on April 11, 2018, December 4, 2018, and March 6, 2019, revealed the device functioned properly, and Whitmire experienced no sustained arrhythmias. (Tr. 462-63, 498-501).

Whitmire asserts the ALJ did not consider the record in its entirety, and instead relied only on isolated portions of the record that supported his finding of no disability. However, Whitmire points to only one additional record to support the existence of more significant limitations than the ALJ identified: an August 23, 2018, treatment note stating Whitmire continued to experience palpitations, especially at night, despite an adjustment in his pacemaker. However, during the same visit, Whitmire denied chest pain and breathing problems, reported walking seven days a week for exercise, and displayed no symptoms of arrythmia or congestive heart failure. (Tr. 488-89). In addition, an August 31, 2018, echocardiogram revealed normal rhythm, normal ventricle size and function, a normally functioning aortic valve, and no pericardial effusion. (Tr. 494-95). The court's independent review of the record did not identify

10

any other medical records that support functional limitations greater than those the ALJ imposed.

Importantly, Whitmire's history of heart conditions and related surgeries does not automatically necessitate a finding of disability, as the functional effect of a claimant's impairments, not the mere existence of the impairments themselves, governs the analysis. *See Moore,* 405 F.3d at 1213 n.6 (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)) ("To a large extent, Moore questions the ALJ's RFC determination based solely on the fact that she has varus leg instability and shoulder separation. However, the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard."); *Mansfield v. Astrue*, 395 F. App'x 528, 531 (11th Cir. 2010) (diagnosis insufficient to establish disability); *Osborn v. Barnhart*, 194 F. App'x 654, 667 (11th Cir. 2006) (While a doctor's letter reflected diagnoses, "it does not indicate in any way the limitations these diagnoses placed on [the claimant's] ability to work, a requisite to a finding of disability.").

The ALJ also appropriately relied upon the opinion of Dr. Ransom, the state agency physician, who examined Whitmire's medical records and rendered an opinion regarding Whitmire's residual functional capacity on May 25, 2018. Pursuant to revised Social Security regulations, an ALJ should primarily consider the supportability and consistency of any medical opinion when deciding the weight to afford that opinion.

11

20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2).  An ALJ may credit the opinion of a state agency physician over the opinion of a consulting or treating physician, if the evidence so warrants.

> [T]he opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist.

SSR 96-6p, 1996 WL 374180, *2 (July 2, 1996).  As stated in *Duncan v. Berryhill*, No. 3:15-cv-02164-LSC, 2017 WL 3969578 (N.D. Ala. Sept. 8, 2017):

> [M]edical consultants or medical experts are highly qualified medical specialists who are experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions.  *See* 20 C.F.R. §[§ 404.1527(e), 404.1513a, 416.927(e), 416.913a]; SSR 96-6p.  Indeed, a medical expert's opinion may be entitled to greater weight than the opinions of treating or examining sources in appropriate circumstances, such as when the medical expert has reviewed the complete case record.  *See* SSR 96-6p.  In short, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion."  *McCloud v. Barnhart*, 166 Fed. Appx. 410, 418-19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

*Id.* at *4.  *See also* 20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5) (The ALJ "will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding," including, but not limited to "evidence showing a

12

medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements.").

Dr. Ransom opined Whitmire could occasionally lift 20 pounds and frequently lift ten pounds. He could stand and/or walk six hours and sit six hours in an eight-hour workday. He could perform unlimited pushing and pulling movements within his weight restrictions. He could frequently climb ramps and stairs, balance, stoop, kneel, and crouch, but he could only occasionally crawl, and he could never climb ladders, ropes, or scaffolds. Dr. Ransom stated the climbing restrictions resulted from Whitmire's Xarelto therapy. Whitmire maintained no manipulative, visual, or communicative limitations. He should avoid concentrated exposure to extreme cold, extreme heat, wetness, and humidity. Due to his anticoagulant therapy, he should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation, and he should avoid all exposure to hazards such as machinery and heights. However, he could tolerate unlimited exposure to noise and vibration. (Tr. 55-57).

As discussed, the ALJ considered Dr. Ransom's assessment persuasive as Whitmire's use of Xarelto warranted restrictions on crawling and climbing ropes, ladders, and scaffolds, and his history of stable but ongoing treatment for cardiac impairments warranted otherwise moderate restrictions. (Tr. 21). The ALJ properly articulated his reasons for crediting Dr. Ransom's opinion, and the record, as discussed previously, provides substantial support for the ALJ's decision. Accordingly, the ALJ

13

properly considered Dr. Ransom's opinion, and that opinion provided additional evidentiary support for the ALJ's decision to find Whitmire capable of performing a limited range of light work despite his cardiac conditions.

In summary, Whitmire fails to establish substantial evidence does not support the ALJ's consideration of his subjective symptoms.

## CONCLUSION

For the foregoing reasons, the court **AFFIRMS** the Commissioner's decision. The court will enter a separate final judgment.

**DONE** this 23rd day of March, 2022.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE